# IN THE UNITED STATES DISTRICT COURT
## FO THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| JACQUELINE KEBART, | ) | **Case No**: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **CLASS ACTION** |
| VOLKSWAGEN AG; VOLKSWAGEN | ) | **CIVIL ACTION COMPLAINT** |
| GROUP OF AMERICA, INC.; AUDI AG; | ) | |
| AUDI OF AMERICA, INC.; AUDI OF | ) | |
| AMERICA, LLC; DR. ING. H.C.F. | ) | |
| PORSCHE  AG; PORSCHE CARS OF | ) | **JURY TRIAL DEMANDED** |
| NORTH AMERICA, INC.; BENTLEY | ) | |
| MOTORS LIMITED; DAIMLER | ) | |
| AKTIENGESELLSCHAFT; MERCEDES- | ) | |
| BENZ USA, LLC; MERCEDES-BENZ | ) | |
| VANS, LLC;  MERCEDES-BENZ US | ) | |
| INTERNATIONAL, INC.; BMW AG and | ) | |
| BMW NORTH AMERICA, LLC; | ) | |
| Defendants. | ) | |

Plaintiff, Jacqueline Kebart ("Plaintiff" or "Kebart"), on behalf of herself and all others similarly situated (defined below), upon personal knowledge as to the facts pertaining to herself and upon information and belief as to all other matters, and based on the investigation of counsel, brings this class action for damages, injunctive relief, and other relief pursuant to federal antitrust laws and state antitrust, unfair competition, consumer protection, and unjust enrichment laws, and alleges as follows:

## NATURE OF ACTION

1.      This lawsuit involves a vast, two decades-long conspiracy among German automotive manufacturers to unlawfully increase the prices of German Luxury Vehicles (as defined herein). This putative class action is brought against Volkswagen AG, Volkswagen Group of America, Inc. (together, "Volkswagen"); Audi AG, Audi of America Inc., Audi of America, LLC (together, "Audi"); Dr. Ing. h.c.F. Porsche AG ("Porche AG"), Porsche Cars of North America, Inc. (together, "Porsche"); Bentley Motors Limited ("Bentley"); Daimler Aktiengesellschaft ("Daimler AG"); Mercedes-Benz USA, LLC, Mercedes-Benz Vans, LLC, Mercedes-Benz US International, Inc. (together, "Mercedes"); BMW AG, and BMW North America, LLC (together, "BMW") (collectively, "Defendants"), and named and unnamed co-conspirators, for agreeing to share commercially-sensitive information and reach unlawful agreements regarding German Luxury Vehicle technology, costs, suppliers, market, emissions equipment and other competitive attributes thereby causing injury to Plaintiff and the Classes.

2.      "German Luxury Vehicle(s)," as used herein, refers to vehicles sold by the Defendants under the following five brands:  Mercedes-Benz, Porsche, Audi, BMW, and Bentley.[1]

---

[1] Daimler AG owns the Mercedes-Benz brand. Volkswagen owns the Audi, Porsche and Bentley brands.

3.      The conspiracy alleged here is both long-running and massive.  Volkswagen has admitted to authorities that in the last five years alone, Defendants met and conspired through at least 60 working groups, and 1,000 meetings, involving more than 200 employees.

4.      In a document dated July 4, 2016, Volkswagen disclosed to the European Commission ("EC") the existence of an automotive manufacturing conspiracy concerning the "development of [Defendants'] vehicles, costs, suppliers and markets for many years, at least since the 1990s, to the present day."

5.      The EC is conducting ongoing investigations of the Defendants concerning potential anticompetitive activities.

6.      Volkswagen and Daimler AG have also reportedly admitted to participating in the unlawful cartel and applied for leniency from the EC in exchange for their cooperation in the probe.

7.      As discussed herein, among the many subjects of Defendants' unlawful collusion was an agreement on the size of AdBlue tanks to be used in German Luxury Vehicles.

8.      As a result of Defendants' overarching conspiracy, Plaintiff and the Classes paid for German Luxury Vehicles at unlawfully inflated prices.

9.      The business activities of Defendants substantially affected intrastate and interstate trade and commerce in the United States and caused antitrust injury to Plaintiff and members of the Classes in the United States.

10.     Plaintiff seeks to represent all persons and entities who, from at least as early as January 1, 1990 through such time as the anticompetitive effects of the Defendants' conduct ceases (the "Class Period"), purchased or leased a German Luxury Vehicle in the United States which was manufactured or sold by any of the Defendants.

## JURISDICTION AND VENUE

11.     Plaintiff brings this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure equitable and injunctive relief against Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1).  Plaintiff also asserts claims for actual and exemplary damages pursuant to state antitrust, unfair competition, consumer protection and unjust enrichment laws, and seeks to obtain restitution, recover damages and secure other relief against the Defendants for violations of those state laws.  Plaintiff and the Classes also seek attorneys' fees, costs, and other expenses under federal and state law.

12.     This Court has jurisdiction over the subject matter of this action pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26), Section 1 of the Sherman Act (15 U.S.C. § 1), and Title 28, United States Code, Sections 1331 and 1337.  This Court has subject matter jurisdiction of the state law claims pursuant to 28 U.S.C. §§ 1332(d) and 1367, in that this is a class action in which the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed Classes are citizens of a state different from that of the Defendants.

13.     Venue is proper in this District pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22), and 28 U.S.C. §§ 1391 (b), (c), and (d), because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District, and one or more of the Defendants reside, are licensed to do business in, are doing business in, had agents in, or are found or transact business in this District.

14.     This Court has *in personam* jurisdiction over the Defendants because each, either directly or through the ownership and/or control of their subsidiaries, *inter alia*: (a) transacted

business in the United States, including in this District; (b) directly or indirectly sold or marketed substantial quantities of German Luxury Vehicles in the United States, including in this District; (c) had substantial aggregate contacts with the United States, including in this District; or (d) were engaged in an illegal conspiracy in restraint of trade that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to, the business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this District. Defendants also conduct business throughout the United States, including in this District, and have purposefully availed themselves of the laws of the United States.

15.     Defendants engaged in conduct both inside and outside of the United States that has caused direct, substantial and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States.

16.     The activities of Defendants and their co-conspirators were within the flow of, were intended to, and did have, a substantial effect on intrastate and interstate commerce of the United States. Defendants' products are sold in the flow of interstate commerce.

17.     German Luxury Vehicles manufactured abroad by Defendants and sold in the United States are goods brought into the United States for sale, and therefore constitute import commerce.  The anticompetitive conduct, and its effect on United States commerce described herein, proximately caused antitrust injury in the United States.

18.     Defendants' unlawful activities substantially affected commerce throughout the United States, causing injury to Plaintiff and members of the Classes. Defendants, directly and through their agents, engaged in anticompetitive activities affecting all states, as they coordinated activities related to vehicle development of Defendants' vehicles, costs, suppliers and markets.

19.     Defendants' conspiracy and anticompetitive conduct described herein caused consumers in the United States who purchased or leased a new German Luxury Vehicles to pay unlawfully inflated prices.

## PARTIES

### Plaintiff

20.     Plaintiff, Kebart, is a resident of Palm Beach County, Florida, who purchased or leased one or more German Luxury Vehicles at unlawfully inflated prices during the relevant Class Period.

### Defendants

21.     When Plaintiff refers to a corporate family or companies by a single name in the Complaint, she is alleging that one or more employees or agents of entities within that corporate family engaged in conspiratorial acts on behalf of every company in that corporate family.  The individual participants in the conspiratorial acts did not always know the corporate affiliation of their counterparts, nor did they distinguish between the entities within a corporate family.  The individual participants entered into agreements on behalf of their respective corporate families.  As a result, those agents represented the entire corporate family with respect to such conduct, and the corporate family was party to the agreements that those agents reached.

### The Volkswagen Defendants

22.     Defendant, Volkswagen AG, is a German corporation with its principal place of business in Wolfsburg, Germany.  Volkswagen AG is the parent company of Volkswagen Group of America, Inc., Audi AG, Porsche AG, and Bentley.  In 2016, Volkswagen AG was the largest

auto manufacturer in the world. Volkswagen AG's sales revenue for 2016 was more than $217 billion dollars.

23.     Defendant, Volkswagen Group of America, Inc., is incorporated in New Jersey and does business in all fifty (50) states and the District of Columbia, with its principal place of business in Herndon, Virginia.  Volkswagen Group of America, Inc. advertises, markets, and sells and leases Volkswagen vehicles through the United States, including in this District during the Class Period.

## The Audi Defendants

24.     Defendant, Audi AG, is a German corporation with its principal place of business in Ingolstadt, Germany. Audi AG is the parent company of Audi of America, Inc. and Audi of America, LLC, and also is a wholly-owned subsidiary of Volkswagen AG. Audi AG designs, develops, manufactures, sells and leases the German Luxury Vehicles at issue that were purchased throughout the United States, including this District, during the Class Period. Audi AG directs the activities of its subsidiaries which act as its agents selling German Luxury Vehicles throughout the United States.

25.     Defendant, Audi of America, Inc., is incorporated in New Jersey and does business in all fifty (50) states and the District of Columbia, with its principal place of business in Herndon, Virginia.

26.     Defendant, Audi of America, LLC, is incorporated in Delaware, and does business in all fifty (50) states and the District of Columbia, with its principal place of business in Herndon, Virginia.

### The Porsche Defendants

27.     Defendant, Dr. Ing. h.c. F. Porsche AG, is a German corporation with its principal place of business located in Stuttgart, Germany. Porsche AG is a wholly-owned subsidiary of Volkswagen AG. Porsche AG designs, develops, manufactures, sells and leases the German Luxury Vehicles at issue that were purchased throughout the United States, including this District during the Class Period.

28.     Defendant, Porsche Cars of North America, Inc., is incorporated in Delaware with its principal place of business in Georgia.  Porsche Cars North America, Inc. is a wholly-owned subsidiary of Porsche AG and advertises, markets, sells and leases German Luxury Vehicles in all fifty (50) states.   Porsche Cars of North America, Inc. maintains a network of 189 dealers throughout the United States.

### Bentley

29.     Defendant, Bentley is organized under the laws of the United Kingdom.  Bentley has been a subsidiary of Volkswagen AG since 1998. In 2012, Bentley moved its U.S. headquarters to the offices of Volkswagen Group of America, Inc. in Herndon, Virginia.  Prior to this change, Bentley was headquartered in Boston, Massachusetts.

### Daimler AG

30.     Defendant Daimler AG, is a foreign corporation headquartered in Stuttgart, Baden-Württemberg, Germany.  Daimler AG designs, engineers, manufactures, tests, markets, supplies, sells and distributes the German Luxury Vehicles at issue that were purchased throughout the United States, including in this District, during the Class Period. Daimler AG is the parent company of Mercedes-Benz USA, LLC and controls this subsidiary which acts as the sole

distributor for Mercedes-Benz vehicles in the United States.  Daimler AG owns 100% of the capital

share in Mercedes-Benz USA, LLC.

### The Mercedes Defendants

31.     Defendant, Mercedes-Benz USA, LLC, is a Delaware limited liability corporation

with its principal place of business in Atlanta, Georgia.[2]  Mercedes-Benz USA, LLC operates a

regional sales office, a parts distribution center, and a customer service center in New Jersey.

Mercedes-Benz USA, LLC designs, manufactures, markets, distributes sells and leases the German

Luxury Vehicles at issue that were purchased throughout the United States, including in this

District during the Class Period.

32.     Defendant Mercedes-Benz U.S. International, Inc., is a corporation organized and

existing under the laws of Alabama, with its principal place of business in Vance, Alabama.

Mercedes-Benz U.S. International, Inc. is a wholly-owned subsidiary of Daimler AG.

33.     Defendant, Mercedes-Benz Vans, LLC, is a Delaware limited liability corporation

with its principal place of business in Ladson, South Carolina.  Mercedes-Benz Vans, LLC is a

wholly owned U.S. subsidiary of Daimler AG.

### The BMW Defendants

34.     Defendant Bayerische Motoren Werke AG ("BMW AG") is a German holding

company and vehicle manufacturer.  BMW AG is headquartered in Germany.  BMW AG, together

with its subsidiaries, develops, manufactures, sells and leases cars and motorcycles worldwide,

including the German Luxury Vehicles at issue that were purchased throughout the United States,

including this District during the Class Period.

---

[2] Prior to July 2015, Mercedes-Benz USA, LLC's principal place of businesses was in Montvale, New Jersey.

35.     Defendant BMW North America, LLC is a Delaware limited liability company with its principal place of business in Woodcliff Lake, New Jersey.  BMW of North America, is the United States importer of BMW vehicles.

### AGENTS AND CO-CONSPIRATORS

36.     Each Defendant acted as the principal of or agent for the other Defendants with respect to the acts, violations, and common course of conduct alleged herein.

37.     Robert Bosch GmbH is a German multinational engineering and electronics company headquartered in Gerlingen, Germany.  Robert Bosch GmbH, directly and/or through its North-American subsidiary, Robert Bosch LLC, designs, manufactures, develops, and supplies automotive technology.

38.     Robert Bosch LLC is a Delaware limited liability company with its principal place of business in Farmington Hills, Michigan.  Robert Bosch LLC is wholly owned and controlled by Robert Bosch GmbH.  Robert Bosch LLC worked in conjunction with its parent company,  Robert Bosch GmbH,  to design, manufacture, develop, and supply automotive technology to the Defendants for use in the German Luxury Vehicles.

39.     Various other persons, partnerships, sole proprietors, firms, corporations and individuals not named as defendants in this lawsuit, and individuals, the identities of which are presently unknown, have participated as co-conspirators with the Defendants in the offenses alleged in this Complaint, and have performed acts and made statements in furtherance of the conspiracy or in furtherance of the anticompetitive conduct.

40.     Whenever in this Complaint reference is made to any act, deed or transaction of any corporation or limited liability entity, the allegation means that the corporation or limited liability entity engaged in the act, deed or transaction by or through its officers, directors, agents,

employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's or limited liability company's business or affairs.

## FACTUAL ALLEGATIONS

### A.      The German Luxury Vehicle Conspiracy

41.      Beginning as early as the 1990s, Defendants have shared commercially-sensitive information and reached unlawful agreements regarding German Luxury Vehicle technology, costs, suppliers, market, emissions equipment and other competitive features.

42.      Defendants' conspiracy has garnered the attention of competition authorities from multiple jurisdictions, including the United States, to open investigations into Defendants' unlawful conduct.

### 1.      Working Groups

43.      It has been disclosed that in just the last five years alone, Defendants secretly cooperated and shared competitively sensitive information through 60 working groups and over 1,000 meetings.  These contacts involved at least 200 employees.  Defendants' employees who took part in these meetings were assigned working groups and sub-working groups, and organized according to the following areas: "braking control systems, seating systems, air suspensions, clutches, gasoline engines and diesel engines."[3]  The groups were internally referred to as "groups of five" due to five auto brands cooperating.  It has been reported that the cooperation among the Defendants worked more effectively than the cooperation among various departments within a company.

44.      In Volkswagen's submission in July 2016 to the cartel authorities it noted, "there was exchange of internal, competitively sensitive technical data," and Defendants had jointly

---

[3] http://bambinoides.com/the-cartel-collusion-between-germanys-biggest-carmakers/.

established "technical standards" and agreed to use "only certain technical solutions" in their new vehicles.

45.     One example of an area in which Defendants cooperated was with respect to the speed in which their convertible tops operated.  An agreement reached by the "working group for mechanical attachments" had numerous meetings to determine the maximum speed at which a driver could open or close the top of his/her convertible automobile. Written minutes of a meeting held in Bad Kissingen reveal "[n]o arms race when it comes to speeds."  The minutes disclose that arguments against an "arm's race" were "costs, weight, increasing technological risk and crash relevance."  The outcome of that meeting is that soft tops on convertibles sold by Daimler, BMW, Audi, Porsche and Volkswagen can only be opened or closed at speeds of up to 50 kilometers per hour.

### 2.     The AdBlue Tank Agreements

46.     As part of Defendants' overarching conspiracy in the German Luxury Vehicles market, Defendants coordinated and agreed upon the emissions control technology in their diesel vehicles, specifically the size of AdBlue tanks.

47.     AdBlue is an aqueous reductant agent that is used with a Selective Catalytic Reduction ("SCR") system to clean the emissions disseminated from diesel vehicles.  AdBlue tanks are also called Diesel Exhaust Flued ("DEF").  Urea is a component of DEF and AdBlue. Specifically, 32.5% of high grade environmental urea and 67.5% deionized water make up what is known as DEF or AdBlue.  DEF or AdBlue, along with the SCR system, enables auto-manufactures to remain compliant with emissions standards.

48.     In September 2008, in order to reduce costs, Defendants all agreed to use small eight-liter AdBlue tanks.  Defendants reasoned that the small tanks would save each automaker

approximately €80 euro per vehicle.  Space was also a consideration in the decision.  The small AdBlue tank created more cargo room for luxury items and premium vehicle options.

49.     In 2010, Defendants unlawfully agreed to increase the size of AdBlue tanks in the U.S. to 16-liters.  Defendants reached this agreement despite the fact that they knew that a 16-liter AdBlue tank was insufficient to meet rising U.S. emissions standards.  Audi wrote in an email that a "minimum tank volume of 19 liters" was needed based on "average AdBlue consumption" to comply with U.S. requirements.  *Der Spiegel* reports that the Defendants found it "absolutely necessary to have a 'coordinated approach' with respect to tank sizes."

50.     In order to ensure that U.S. regulators did not scrutinize its emissions control systems, Volkswagen was insistent that the agreements on AdBlue tank size were necessary.  Volkswagen feared that unless there was a coordinated approach by Defendants, different sized AdBlue tanks would cause United States' emissions regulators to question how some companies were able to get away with a smaller sized AdBlue tank, while others needed substantially more solution to clean their emissions.

51.     Volkswagen knew that it could still pass United States' emissions testing with a 16-liter tank because it had designed a work-around that enabled its vehicles to pass emissions testing without adequately sized AdBlue tanks.

52.     This work-around is commonly referred to as a "defeat device" and is at the heart of Volkswagen's 2015 NOx defeat device scandal that is now been made public and has garnered significant attention by the authorities.  Volkswagen and its subsidiaries installed software in Volkswagen, Audi, and Porsche vehicles that could sense when the car was being tested for emissions and make emission control adjustments so that the vehicle dispersed fewer emissions during testing than actually occurred when the vehicles were on the road.

53.     Volkswagen pleaded guilty to using this defeat device software to lie and mislead the United States Environmental Protection Agency ("EPA") and U.S. consumers regarding the environmental friendliness of their "clean" vehicles.  Volkswagen paid more than $20 billion in civil and criminal penalties for deploying the "defeat device" to cheat emissions compliance regulations, see *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litig.*, MDL No. 2672 CRB (JSC) ("Volkswagen 'Clean Diesel' Litigation") (settlement of $14.7 billion for the consumer class); *United States v. Volkswagen AG*, No. 16-cr-20394 (E.D. Mich. 2016) (settlement with DOJ for $ 4.3 billion).  There is currently a class action pending against Mercedes for similar conduct, *Albers et al. v. Mercedes-Benz USA LLC*, No. 16-881 (D.N.J. 2017).

54.     Defendants' meetings and conversations regarding AdBlue and emissions control technology were only a small part of the conspiracy.  Defendants colluded and agreed upon virtually every aspect of their respective vehicles, including, but not limited to, brake systems, seating systems, chassis, and suspension systems.

## B.     Government Investigations into Price-Fixing in the German Luxury Vehicles Industry

55.     On July 22, 2017, the European Commission ("EC") announced that it was investigating allegations of an antitrust cartel among a group of major German Luxury Vehicle manufacturers, including Volkswagen and its subsidiaries, Audi and Porsche, Daimler, and its subsidiaries Mercedes-Benz and Smart, and BMW.

56.     European antitrust officials, the EC and its German counterpart, the Bundeskartellamt, have all confirmed that they received information from the Defendants that may relate to the operation of an antitrust cartel dating back to as early as the 1990s.

57.     The EC has already confiscated documents from the Defendants and interviewed witnesses in connection with the alleged cartel.

58.     According to Volkswagen's admissions to German antitrust officials, Defendants entered into potentially unlawful agreements regarding "vehicle development, brakes, petrol and diesel engines, clutches and transmissions as well as exhaust treatment systems."

59.     Reports indicate that Volkswagen and Daimler have both come forward to European regulators admitting to participation in an antitrust conspiracy in exchange for leniency. It has been reported that Daimler has obtained leniency, while Volkswagen is purportedly eligible for a reduction in fines in exchange for its cooperation.

60.     The United States Department of Justice's Antitrust Division announced on July 25, 2017 that it is also investigating the matter.

## C.     Defendants are Recidivist Violators of U.S Laws

61.     The automotive industry has been rattled by a wave of scandals involving various schemes by major automobile manufacturers to evade United States' laws.

62.     Volkswagen and Daimler are recidivist offenders.  As noted above, in 2015, Volkswagen admitted that it created a work-around to cheat diesel emissions tests, and was the target of regulatory investigations in multiple countries, including the United States. In the United States alone, Volkswagen paid more than $20 billion in criminal penalties and civil restitution for those violations.

63.     In 2016, European truck makers MAN, Daimler, DAF, Iveco, and Volvo-Renault were exposed to be involved in a truck price-fixing scandal.  All except Volkswagen-owned MAN paid record fines, which Volkswagen avoided paying by being the first participant in the illegal

cartel to bring the unlawful conduct to regulators' attention.  Daimler paid over $1 billion in fines to the EC for its role in this price-fixing conspiracy.

**D.    The Structure and Characteristics of the German Luxury Vehicles Market Are Conducive to Anticompetitive Behavior**

64.    The structure and other characteristics of the German Luxury Vehicle market in the United States are conducive to collusion. Specifically, the German Luxury Vehicle market: (1) has high barriers to entry; (2) has inelasticity of demand; and (3) is highly concentrated.

**1.    The German Luxury Vehicle Market Has High Barriers to Entry**

65.    A collusive arrangement that lower costs for manufacturers while simultaneously increasing the price of the product to consumers would, under basic economic principles, attract new entrants seeking to benefit from the supra-competitive pricing.  Where, however, there are significant barriers to entry, new entrants are less likely to enter the market.  Thus, barriers to entry help to facilitate the formation and maintenance of a cartel.

66.    There are substantial barriers that preclude, reduce, or make it more difficult to enter into the German Luxury Vehicle market.  A new entrant into the business would face costly and lengthy start-up costs, including multi-million dollar costs associated with manufacturing plants and equipment, energy, transportation, distribution infrastructure, skilled labor, and long-standing customer relationships.

67.    In addition, there are high-switching costs when it comes to German Luxury Vehicles, effectively locking consumers into their purchase and making it more difficult for new entrants to succeed in the market.

**2.    There is Inelasticity of Demand for German Luxury Vehicles**

68.    "Elasticity" is an economic term used to describe the sensitivity of supply and demand to changes in one or the other.  For example, demand is said to be "inelastic" if an increase

15

in the price of a product results in only a small decline in the quantity sold of that product, if any. In other words, customers have nowhere to turn for alternative, cheaper products of similar quality, and so they continue to purchase despite a price increase.

69.    For a cartel to profit from raising prices above competitive levels, demand must be relatively inelastic at competitive prices.  Otherwise, increased prices would result in declining sales, revenues and profits, as customers purchased substitute products or declined to buy altogether.  Inelastic demand is a market characteristic that facilitates collusion, allowing producers to raise their prices without triggering customer substitution and lost sales revenue.

70.    Demand for German Luxury Vehicles is highly inelastic because there are no close substitutes for these products.

### 3.    The Market for German Luxury Vehicles Is Highly Concentrated

71.    A highly concentrated market is more susceptible to collusion and other anti-competitive practices.

72.    Defendants make up 100% of the German Luxury Vehicle market.



73.    In 2016, Daimler reported €89.284 billion in revenue for its Mercedes-Benz Cars division, which is largely comprised of German Luxury Vehicles.

74.     In 2016, BMW reported €86.424 billion in revenue for its automotive division, which is comprised of BMW, Mini, and Rolls-Royce vehicle sales.  BMW vehicles comprised the majority (83%) of those sales.

75.     In 2016, Volkswagen reported €105.651 billion in revenue for its VW passenger car division, €59.317 billion for its Audi division, and €22.318 billion for its Porsche division.

76.     Capital requirements and technological changes make the German Luxury Vehicle market difficult for new entrants generally.  The collusion over Defendants' vehicles, costs, suppliers, and markets increases the barriers to entry for new auto manufacturers.

77.     Volkswagen owns both Audi and Porsche, and in 2016 was the largest vehicle manufacturer in the world.

## CLASS ACTION ALLEGATIONS

78.     Plaintiff brings this action on behalf of herself and as a class action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive relief on behalf of the following class (the "Nationwide Class"):

> All persons and entities who, during the Class Period, purchased or leased a new German Luxury Vehicle in the United States, not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of the Defendants.

79.     Plaintiff also brings this action on behalf of herself and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to state antitrust, unfair competition, and consumer protection laws, as well as common law unjust enrichment on behalf of the following class (the "Damages Class"):

> All persons and entities who, during the Class Period, purchased or leased a new German Luxury Vehicle in the Indirect Purchaser States[4] not for resale, which was manufactured or sold by a

---

[4] The Indirect Purchaser States are the states listed in the Second and Third Claims for Relief.

Defendant, any current or former subsidiary of a Defendant, or any co-conspirators of the Defendants.

80.     The Nationwide Class and the Damages Class are collectively referred to herein as the "Classes."  Excluded from the Classes are the Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased German Luxury Vehicles directly or for resale.

81.     While Plaintiff does not know the exact number of the members of the Classes, Plaintiff believes there are (at least) thousands of members in each Class.

82.     Common questions of law and fact exist as to all members of the Classes.  This is particularly true given the nature of the Defendants' conspiracy, which was generally applicable to all the members of both Classes, thereby making appropriate relief with respect to the Classes as a whole. Such questions of law and fact common to the Classes include, but are not limited to:

(a)     Whether the Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to artificially inflate the price of German Luxury Vehicles sold and leased in the United States;

(b)     The identity of the participants of the alleged conspiracy;

(c)     The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

(d)     Whether the alleged conspiracy violated the Sherman Act, as alleged in the First Claim for Relief;

(e)     Whether the alleged conspiracy violated state antitrust, unfair competition, and/or consumer protection laws, as alleged in the Second and Third Claims for Relief;

(f)     Whether the Defendants unjustly enriched themselves to the detriment of the Plaintiff and the members of the Classes, thereby entitling Plaintiff and the members of the Classes to disgorgement of all benefits derived by Defendants, as alleged in the Fourth Claim for Relief;

(g)     Whether the conduct of the Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiff and the members of the Classes;

(h)     The effect of the alleged conspiracy on the prices of German Luxury Vehicles sold and leased in the United States during the Class Period;

(i)     Whether Plaintiff and the members of the Classes had any reason to know or suspect the conspiracy, or any means to discover the conspiracy;

(j)     Whether the Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from Plaintiff and the members of the Classes;

(k)     The appropriate injunctive and related equitable relief for the Nationwide Class; and

(l)     The appropriate class-wide measure of damages for the Damages Class.

83.     Plaintiff's claims are typical of the claims of the members of the Classes, and Plaintiff will fairly and adequately protect the interests of the Classes.  Plaintiff and all members of the Classes are similarly affected by the Defendants' wrongful conduct in that they all paid artificially inflated prices for German Luxury Vehicles purchased from the Defendants and/or their co-conspirators.

84.     Plaintiff's claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes.  Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the Classes.  Plaintiff is represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

85.     The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

86.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender.   The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

87.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendants.

## PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

### A.     The Statute of Limitations Did Not Begin to Run Because Plaintiff and Class Members Did Not and Could Not Discover Their Claims Until July 21, 2017

88.     Plaintiff repeats and re-alleges the allegations set forth above.  Plaintiff and members of the Classes had no knowledge of the combination or conspiracy alleged herein, or of facts sufficient to place Plaintiff on inquiry notice of the claims set forth herein, until (at the earliest) July 21, 2017, the date when *Der Spiegel* reported that Volkswagen disclosed its participation in the unlawful conspiracy alleged herein.

89.     Plaintiff and members of the Classes are consumers and businesses that purchased or leased Defendants' German Luxury Vehicles, not for resale.  Plaintiff had no direct contact or

interaction with the Defendants and therefore had no means by which she could have discovered the combination and conspiracy described in this Complaint before July 21, 2017, the date that *Der Spiegel* reported that Volkswagen disclosed its participation in the unlawful conspiracy alleged herein.

90.     No information in the public domain was available to Plaintiff and members of the Classes prior to July 21, 2017, the date when *Der Spiegel* reported that Volkswagen had disclosed participation in antitrust violations resulting from coordination with German Auto Manufacturers about the development of their vehicles, costs, suppliers and strategies for controlling emissions in diesel engines from at least the 1990s to the present day.  Plaintiff and members of the Classes had no means of obtaining any facts or information concerning any aspect of Defendants' dealings with other manufacturers and suppliers much less the fact that they and their co-conspirators had engaged in the combination and conspiracy alleged herein.

91.     For these reasons, the statute of limitations as to Plaintiff's and the Classes' claims did not begin to run, and has been tolled with respect to the claims that Plaintiff and members of the Classes have alleged in this Complaint.

**B.     Fraudulent Concealment Tolled the Statute of Limitations**

92.     In the alternative, application of the doctrine of fraudulent concealment tolled the statute of limitations on the claims asserted herein by Plaintiff and the Classes.  Plaintiff and members of the Classes did not discover, and could not discover through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until July 21, 2017, the date when *Der Spiegel* reported that Volkswagen disclosed its participation in the conspiracy alleged herein.

93.     Before that time, Plaintiff and members of the Classes were unaware of Defendants' unlawful conduct, and did not know before then that they were continuing to pay supra-competitive

prices for German Luxury Vehicles throughout the United States during the Class Period. No information, actual or constructive, was ever made available to Plaintiff and members of the Classes that even hinted to Plaintiff that she was being injured by Defendants' unlawful conduct.

94.     The affirmative acts of Defendants alleged herein, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

95.     Defendants' and their co-conspirators' conspiracy was inherently self-concealing. German Luxury Vehicles are not exempt from antitrust regulation and, thus, Plaintiff reasonably believed the industry was competitive. A reasonable person under the circumstances would not have been alerted to begin to investigate the legitimacy of Defendants' German Luxury Vehicle prices before July 21, 2017 at the earliest.

96.     Plaintiff and the members of the Classes could not have discovered the alleged contract, combination or conspiracy at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by the Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination, or conspiracy.

97.     Throughout the course of the conspiracy, the Defendants secretly met at least 1,000 times to communicate, and ultimately coordinate, about various facets of the German Luxury Vehicles industry, including technology, costs, supplies, markets, and emissions equipment. The Defendants' surreptitious meetings successfully concealed the decades-long conspiracy as reflected by the fact that it did not become public until July 21, 2017.

98.     Because the alleged conspiracy was both self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiff and members of the Classes had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a

reasonably diligent person to investigate whether a conspiracy existed, until, at the earliest July 21, 2017, the date that *Der Spiegel* reported that Volkswagen disclosed its participation in the conspiracy alleged herein.

99.     For these reasons, the statute of limitations applicable to Plaintiff and the Classes' claims was tolled and did not begin to run until, at the earliest, July 21, 2017.

## FIRST CLAIM FOR RELIEF
### Violation of Section 1 of the Sherman Act
### (on behalf of Plaintiff and the Nationwide Class)

100.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

101.     Defendants and unnamed co-conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

102.     The acts performed by Defendants as part of, and in furtherance of, their and their co-conspirators' contract, combination, or conspiracy, were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of their affairs.

103.     During the Class Period, Defendants and their co-conspirators entered into a continuing agreement, understanding and conspiracy in restraint of trade to artificially fix, raise, stabilize, and control prices for German Luxury Vehicles, thereby creating anticompetitive effects.

104.     The anticompetitive acts were intentionally directed at the United States market for German Luxury Vehicles, and had a direct, substantial and foreseeable effect on interstate commerce by artificially raising prices of German Luxury Vehicles throughout the United States.

105.     The conspiratorial acts and combinations have caused unreasonable restraints in the market for German Luxury Vehicles.

106.     As a result of Defendants' unlawful conduct, Plaintiff and other similarly situated indirect purchasers in the Nationwide Class who purchased German Luxury Vehicles from the Defendants have been harmed by being forced to pay inflated, supra-competitive prices for German Luxury Vehicles.

107.     In formulating and carrying out the alleged agreement, understanding and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including, but not limited to, the acts, practices and course of conduct set forth herein.

108.     Defendants' conspiracy had the following effects, among others:

(a)     Price competition in the market for German Luxury Vehicles has been restrained, suppressed, and/or eliminated in the United States;

(b)     Prices for German Luxury Vehicles sold by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; and

(c)     Plaintiff and members of the Nationwide Class who purchased German Luxury Vehicles indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

109.     Plaintiff and members of the Nationwide Class have been injured and will continue to be injured in their business and property by paying more for German Luxury Vehicles purchased from Defendants and their co-conspirators than they would have paid and will pay in the absence of the conspiracy.

110.     The alleged contract, combination, or conspiracy is a per se violation of the federal antitrust laws.

111.    Plaintiff and members of the Nationwide Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

**SECOND CLAIM FOR RELIEF**
**Violation of State Antitrust Statutes**
**(on behalf of Plaintiff and the Damages Class)**

112.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

113.    During the Class Period, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy with respect to the sale of German Luxury Vehicles in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

114.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive levels prices, for German Luxury Vehicles in the United States.

115.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to fix, raise, inflate, stabilize, and/or maintain, at artificially supra-competitive levels, prices for German Luxury Vehicles in the United States.

116.    Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive levels prices, for German Luxury Vehicles in the United States.

117.    Defendants' anticompetitive acts described herein were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

118.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Arizona Revised Statutes, §§ 44-1401, *et seq.*

(a)     Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicles' price competition was restrained, suppressed, and eliminated throughout Arizona; (2) German Luxury Vehicles' prices were raised to artificially high levels throughout Arizona; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44- 1401, *et seq.*

119.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the California Business and Professions Code, §§ 16700, *et seq.*

(a)     During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professions Code. Defendants, and each of them, have acted in violation of Section 16720 to fix, raise, inflate, stabilize, and/or maintain, at artificially supra-competitive levels, prices for German Luxury Vehicles in the United States.  The

aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise, inflate, stabilize, and/or maintain, at artificially supra-competitive levels, prices for German Luxury Vehicles in the United States.

(b)     For the purpose of forming and effectuating the unlawful trust, Defendants and their co-conspirators have done those things which they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth above and fixing, raising, stabilizing, and pegging the price of German Luxury Vehicles.

(c)     The combination and conspiracy alleged herein has had, *inter alia*, the following effects: (1) price competition in the sale of German Luxury Vehicles has been restrained, suppressed, and/or eliminated in the State of California; (2) prices for German Luxury Vehicles sold by Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) those who purchased German Luxury Vehicles directly or indirectly from Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

(d)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property in that they paid more for German Luxury Vehicles than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of Section 16720 of the California Business and Professions Code, Plaintiff and members of the Damages Class seek treble damages and their cost of suit, including reasonable attorneys' fees, pursuant to Section 16750(a) of the California Business and Professions Code.

120.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the District of Columbia Code Annotated §§ 28-4501, *et seq.*

(a)    Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicles' price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) German Luxury Vehicles' prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(b)    During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq.*

121.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Iowa Code §§ 553.1, *et seq.*

(a)    Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicles' price competition was restrained, suppressed, and eliminated throughout Iowa; (2) German Luxury Vehicles' prices were raised, fixed, maintained, and stabilized at artificially

high levels throughout Iowa; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq.*

122.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Kansas Statutes Annotated, §§ 50-101, *et seq.*

(a)     Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicles' price competition was restrained, suppressed, and eliminated throughout Kansas; (2) German Luxury Vehicles' prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Kansas; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50- 101, *et seq.*

123.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maine Revised Statutes, Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

(a)     Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicles' price competition was restrained, suppressed, and eliminated throughout Maine; (2) German Luxury Vehicles' prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Maine; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

124.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Michigan Compiled Laws Annotated §§ 445.771, *et seq.*

(a)    Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicles' price competition was restrained, suppressed, and eliminated throughout Michigan; (2) German Luxury Vehicles' prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Michigan; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq.*

125.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Minnesota Annotated Statutes §§ 325D.49, *et seq.*

(a)    Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicle's price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Minnesota; (3) Plaintiff and members of the Damages Class

were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(b)      During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq.*

126.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Mississippi Code Annotated §§ 75-21-1, *et seq.*

(a)      Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicles' price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) German Luxury Vehicles' prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Mississippi; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(b)      During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. §§ 75-21-1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Mississippi Code Ann. §§ 75-21-1, *et seq.*

127.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nebraska Revised Statutes §§ 59-801, *et seq.*

(a)     Defendants' combinations or conspiracy had the following effects: (1) German Luxury Vehicles' price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) German Luxury Vehicles' prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Nebraska; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq.*

128.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nevada Revised Statutes Annotated §§ 598A.010, *et seq.*

(a)      Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicle price competition was restrained, suppressed, and eliminated throughout Nevada; (2) German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Nevada; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(b)      During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.*

129.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Hampshire Revised Statutes §§ 356:1, *et seq.*

(a)      Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicle price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high prices throughout New Hampshire; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(b)      During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq.*

130.      Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Mexico Statutes Annotated §§ 57-1-1, *et seq.*

(a)      Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicle price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high prices throughout New Mexico; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(b)      During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

35

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under New Mexico Stat. Ann. §§ 57- 1-1, *et seq.*

131.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the New York General Business Laws §§ 340, *et seq.*

(a)      Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicle price competition was restrained, suppressed, and eliminated throughout New York; (2) German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high prices throughout New York; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles when they purchased German Luxury Vehicles, or purchased products that were otherwise of lower quality than they would have been absent the conspirators illegal acts, or were unable to purchase products that they otherwise would have purchased absent the illegal conduct.

(b)      During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of the New York Donnelly Act, §§ 340, *et seq.* The conduct set forth above is a per se violation of the Act. Accordingly, Plaintiff and members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq.*

132.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Carolina General Statutes §§ 75-1, *et seq.*

(a)    Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicle price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high prices throughout North Carolina; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(b)    During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce.

(c)    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et seq.*

133.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Dakota Century Code §§ 51-08.1-01, *et seq.*

(a)    Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicle price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high prices throughout North Dakota; (3) Plaintiff and members of the Damages Class

were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(b)      During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq.*

134.      Defendants have entered into an unlawful agreement in restraint of trade in violation of the Oregon Revised Statutes §§ 646.705, *et seq.*

(a)      Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicle price competition was restrained, suppressed, and eliminated throughout Oregon; (2) German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high prices throughout; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(b)      During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq.*

135.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the South Dakota Codified Laws §§ 37-1-3.1, *et seq.*

(a)     Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicle price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high prices throughout South Dakota; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq.* Accordingly, Plaintiff and

members of the Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq.*

136.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Tennessee Code Annotated §§ 47-25-101, *et seq.*

(a)    Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicle price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Tennessee; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(b)    During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce.

(c)    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq.*

137.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Utah Code Annotated §§ 76-10-3101, *et seq.*

(a)    Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicle price competition was restrained, suppressed, and eliminated throughout Utah; (2)

German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Utah; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-3101, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-3101, *et seq.*

138.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Vermont Stat. Ann. 9 §§ 2453, *et seq.*

(a)     Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicle price competition was restrained, suppressed, and eliminated throughout Vermont; (2) German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Vermont; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Vermont Stat. Ann. 9 §§ 2453, *et seq.*

139.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the West Virginia Code §§ 47-18-1, *et seq.*

(a)     Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicle price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high prices throughout West Virginia; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia Code §§ 47-18-1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under West Virginia Code §§ 47-18- 1, *et seq.*

140.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Wisconsin Statutes §§ 133.01, *et seq.*

(a)    Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicle price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Wisconsin (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(b)    During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq.*

141.    Plaintiff and members of the Damages Class in each of the above states have been injured in their business and property by reason of Defendants' unlawful combination, contract, conspiracy and agreement. Plaintiff and members of the Damages Class have paid more for German Luxury Vehicles than they otherwise would in the absence of Defendants' unlawful conduct.  This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

142.     In addition, Defendants have profited significantly from the aforesaid conspiracy. Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of the Plaintiff and the members of the Damages Class.

143.     Accordingly, Plaintiff and the members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

### THIRD CLAIM FOR RELIEF
**Violation of State Consumer Protection Statutes**
**(on behalf of Plaintiff and the Damages Class)**

144.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

145.     Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

146.     Defendants have knowingly entered into an unlawful agreement in restraint of trade in violation of the Arkansas Code Annotated, § 4-88-101, *et seq.*

(a)     Defendants knowingly agreed to, and did, in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining, at non-competitive and artificially inflated levels, the prices at which German Luxury Vehicles were sold, distributed, or obtained in Arkansas, and took efforts to conceal their agreements from Plaintiff and members of the Damages Class.

(b)     The aforementioned conduct on the part of the Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10).

(c)      Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicle price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Arkansas; (3) Plaintiff and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and the members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(d)      During the Class Period, Defendants' illegal conduct substantially affected Arkansas commerce and consumers.

(e)      As a direct and proximate result of the unlawful conduct of Defendants, Plaintiff and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

(f)      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10) and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute.

147.      Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of California Business and Professions Code § 17200, *et seq.*

(a)      During the Class Period, Defendants marketed, sold, or distributed German Luxury Vehicles in California, and committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above.

(b)      This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged

herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

(c)     Defendants' conduct as alleged herein violated Section 17200.  The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.*, including, but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set forth above; and (2) the violations of Section 16720, *et seq.*, of the California Business and Professions Code, set forth above.

(d)     Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of Section 16720, *et seq.*, of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent.

148.    Defendants' acts or practices are unfair to consumers of German Luxury Vehicles in the State of California within the meaning of Section 17200, California Business and Professions Code.

(a)     Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

(b)     Plaintiff and members of the Damages Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices.

(c)     The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

(d)     The unlawful and unfair business practices of Defendants, and each of them, have caused and continue to cause Plaintiff and the members of the Damages Class to pay supra-competitive and artificially-inflated prices for German Luxury Vehicles. Plaintiff and the members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition.

(e)     The conduct of Defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.

(f)     As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition. Plaintiff and the members of the Damages Class are accordingly entitled to equitable relief, including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

149.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*

(a)     Defendants agreed to, and did, in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at artificial and/or non-competitive levels, the prices at which German Luxury Vehicles were sold, distributed or obtained in the District of Columbia.

(b)     The foregoing conduct constitutes "unlawful trade practices" within the meaning of D.C. Code § 28-3904.  Plaintiff was not aware of Defendants' conspiracy to artificially raise prices and was therefore unaware that she was being unfairly and illegally overcharged.  There was a gross disparity of bargaining power between the parties with respect to the price charged by

Defendants for German Luxury Vehicles.  Defendants had the sole power to set that price and Plaintiff had no power to negotiate a lower price.  Moreover, Plaintiff lacked any meaningful choice in purchasing German Luxury Vehicles because she was unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiff could avoid the overcharges.  Defendants' conduct with regard to sales of German Luxury Vehicles, including their illegal conspiracy to raise the prices of German Luxury Vehicles to supra-competitive, artificially high levels, was substantively unconscionable because it was one-sided and unfairly benefited Defendants, at the expense of Plaintiff and the public.  Defendants took grossly unfair advantage of Plaintiff.  The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for German Luxury Vehicles.

(c)     Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicle price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiff and the Damages Class were deprived of free and open competition; and (4) Plaintiff and the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(d)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

150.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*

(a)     Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicle price competition was restrained, suppressed, and eliminated throughout Florida; (2) German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.

(d)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

151.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq.*

(a)     Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicle price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiff and members of the Damages Class were deprived of free

and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.

(d)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Rev. Stat. § 480, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

152.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Mass. G.L. c. 93A, §2.

(a)     Defendants were engaged in trade or commerce as defined by G.L. c. 93A.

(b)     Defendants agreed to, and did, in fact, act in restraint of trade or commerce in a market which includes Massachusetts, by affecting, fixing, controlling and/or maintaining at artificial or non-competitive levels, the prices at which Luxury Vehicles were sold, distributed, or obtained in Massachusetts and took efforts to conceal their agreements from Plaintiff and members of the Damages Class.

(c)     Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicle price competition was restrained, suppressed, and eliminated throughout Massachusetts; (2) German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Massachusetts; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(d)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class were injured and are threatened with further injury.

(e)     Certain of the Defendants have or will be served with a demand letter in accordance with G.L. c. 93A, § 9, or, upon information and belief, such service of a demand letter was unnecessary due to the defendant not maintaining a place of business within the Commonwealth of Massachusetts or not keeping assets within the Commonwealth. More than thirty (30) days have passed since such demand letters were served, and each Defendant served has failed to make a reasonable settlement offer.

(f)     By reason of the foregoing, Defendants engaged in unfair competition and unfair or deceptive acts or practices, in violation of G.L. c. 93A, §2. Defendants' and their co-conspirators' violations of Chapter 93A were knowing or willful, entitling Plaintiff and members of the Damages Class to multiple damages.

153.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*

(a)     Plaintiff and the Damages Class purchased German Luxury Vehicles for personal, family, or household purposes.

(b)     Defendants engaged in the conduct described herein in connection with the sale of German Luxury Vehicles in trade or commerce in a market that includes Missouri.

(c)     Defendants and their co-conspirators agreed to, and did, in fact, affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which German Luxury Vehicles were sold, distributed, or obtained in Missouri, which conduct constituted unfair practices

in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiff and members of the Damages Class.

(d)     Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for German Luxury Vehicles. The concealed, suppressed, and omitted facts would have been important to Plaintiff and members of the Damages Class as they related to the cost of German Luxury Vehicles they purchased.

(e)     Defendants misrepresented the real cause of price increases and/or the absence of price reductions in German Luxury Vehicles by making public statements that were not in accord with the facts.

(f)     Defendants' statements and conduct concerning the price of German Luxury Vehicles were deceptive as they had the tendency or capacity to mislead Plaintiff and members of the Damages Class to believe that they were purchasing German Luxury Vehicles at prices established by a free and fair market.

(g)     Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicle price competition was restrained, suppressed, and eliminated throughout Missouri; (2) German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Missouri; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(h)     The foregoing acts and practices constituted unlawful practices in violation of the Missouri Merchandising Practices Act.

(i)      As a direct and proximate result of the above-described unlawful practices, Plaintiff and members of the Damages Class suffered ascertainable loss of money or property.

(j)      Accordingly, Plaintiff and members of the Damages Class seek all relief available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…," as further interpreted by the Missouri Code of State Regulations, 15 CSR 60-7.010, *et seq.*, 15 CSR 60-8.010, *et seq.*, and 15 CSR 60-9.010, *et seq.*, and Mo. Rev. Stat. § 407.025, which provides for the relief sought in this count.

154.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Montana Consumer Protection Act of 1973, Mont. Code, §§ 30-14-101, *et seq.*

(a)      Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicle price competition was restrained, suppressed, and eliminated throughout Montana; (2) German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high levels throughout; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(b)      During the Class Period, Defendants' illegal conduct substantially affected Montana commerce and consumers.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.

(d)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code, §§ 30-14-101, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

155.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, *et seq.*

(a)     Defendants and their co-conspirators agreed to, and did, in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which German Luxury Vehicles were sold, distributed or obtained in New Mexico and took efforts to conceal their agreements from Plaintiff and members of the Damages Class.

(b)     The aforementioned conduct on the part of Defendants constituted "unconscionable trade practices," in violation of N.M.S.A. Stat. § 57-12-3, in that such conduct*, inter alia*, resulted in a gross disparity between the value received by Plaintiff and the members of the Damages Class and the prices paid by them for German Luxury Vehicles as set forth in N.M.S.A., § 57-12-2E. Plaintiff was not aware of Defendants' conspiracy to artificially inflate the prices of Luxury Vehicles and was therefore unaware that she was being unfairly and illegally overcharged.  There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for German Luxury Vehicles.  Defendants had the sole power to set that price and Plaintiff had no power to negotiate a lower price.  Moreover, Plaintiff lacked any meaningful choice in purchasing German Luxury Vehicles because she was unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiff could avoid the overcharges.  Defendants' conduct with regard to sales of German Luxury Vehicles, including their illegal conspiracy to secretly fix the price of German Luxury Vehicles at supra-competitive

levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants, at the expense of Plaintiff and the public.  Defendants took grossly unfair advantage of Plaintiff.  The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for German Luxury Vehicles.

(c)      Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicle price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiff and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and the members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(d)      During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers.

(e)      As a direct and proximate result of the unlawful conduct of Defendants, Plaintiff and the members of the Damages Class have been injured and are threatened with further injury.

(f)      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.*, and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute.

156.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*

(a)      Defendants agreed to, and did, in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices

at which German Luxury Vehicles were sold, distributed or obtained in New York and took efforts to conceal their agreements from Plaintiff and members of the Damages Class.

(b)     Defendants and their co-conspirators made public statements about the prices of German Luxury Vehicles and products containing German Luxury Vehicles that Defendants knew would be seen by New York consumers; such statements either omitted material information that rendered the statements that they made materially misleading, or affirmatively misrepresented the real cause of price increases for German Luxury Vehicles and products containing German Luxury Vehicles; and Defendants alone possessed material information that was relevant to consumers, but failed to provide the information.

(c)     Because of Defendants' unlawful trade practices in the State of New York, New York consumer class members who purchased German Luxury Vehicles were misled to believe that they were paying a fair price for German Luxury Vehicles or the price increases for German Luxury Vehicles were for valid business reasons; and similarly situated consumers were potentially affected by Defendants' conspiracy.

(d)     Defendants knew that their unlawful trade practices with respect to pricing German Luxury Vehicles would have an impact on New York consumers and not just the Defendants' direct customers.

(e)     Defendants knew that their unlawful trade practices with respect to pricing German Luxury Vehicles would have a broad impact, causing Class members who purchased German Luxury Vehicles to be injured by paying more for German Luxury Vehicles than they would have paid in the absence of Defendants' unlawful trade acts and practices.

(f)     The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in

consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

(g)      Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicle price competition was restrained, suppressed, and eliminated throughout New York; (2) German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(h)      During the Class Period, Defendants marketed, sold, or distributed German Luxury Vehicles in New York, and Defendants' illegal conduct substantially affected New York commerce and consumers.

(i)      During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed German Luxury Vehicles in New York.

(j)      Plaintiff and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349 (h).

157.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*

(a)      Defendants agreed to, and did, in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which German Luxury Vehicles were sold, distributed or obtained in North Carolina and took efforts to conceal their agreements from Plaintiff and members of the Damages Class.

(b)     Defendants' price-fixing conspiracy could not have succeeded absent deceptive conduct by Defendants to cover up their illegal acts. Secrecy was integral to the formation, implementation and maintenance of Defendants' price-fixing conspiracy. Defendants committed inherently deceptive and self-concealing actions, of which Plaintiff could not possibly have been aware. Defendants and their co-conspirators publicly provided pre-textual and false justifications regarding their price increases. Defendants' public statements concerning the price of German Luxury Vehicles created the illusion of competitive pricing controlled by market forces rather than supra-competitive pricing driven by Defendants' illegal conspiracy. Moreover, Defendants deceptively concealed their unlawful activities by mutually agreeing not to divulge the existence of the conspiracy to outsiders, conducting meetings and conversations in secret, confining the plan to a small group of higher-level officials at each company and avoiding the creation of documents which would reveal the antitrust violations.

(c)     The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

(d)     Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicle price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(e)     During the Class Period, Defendants' marketed, sold, or distributed German Luxury Vehicles in North Carolina, and Defendants' illegal conduct substantially affected North Carolina commerce and consumers.

(f)     During the Class Period, each of the Defendants named herein, directly or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed German Luxury Vehicles in North Carolina.

(g)     Plaintiff and members of the Damages Class seek actual damages for their injuries caused by these violations, in an amount to be determined at trial, and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

158.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, *et seq.*

(a)     Members of this Damages Class purchased German Luxury Vehicles for personal, family, or household purposes.

(b)     Defendants agreed to, and did, in fact, act in restraint of trade or commerce in a market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining at artificial and non-competitive levels, the prices at which German Luxury Vehicles were sold, distributed, or obtained in Rhode Island.

(c)     Defendants deliberately failed to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for German Luxury Vehicles. Defendants owed a duty to disclose such facts.  Defendants breached

that duty by their silence and misrepresented to all Class Members during the Class Period that Defendants' German Luxury Vehicles prices were competitive and fair.

(d)     Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicle price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(e)     As a direct and proximate result of the Defendants' violations of law, Plaintiff and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein.

(f)     Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of German Luxury Vehicles, likely misled all Class Members acting reasonably under the circumstances to believe that they were purchasing German Luxury Vehicles at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiff and members of the Damages Class as they related to the cost of German Luxury Vehicles they purchased.

(g)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Rhode Island Gen. Laws. § 6-13.1-1, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

159.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq.*

(a)      Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicle price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high levels throughout; South Carolina; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(b)      During the Class Period, Defendants' illegal conduct had a substantial effect on South Carolina commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. §§ 39-5-10, *et seq.*, and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute.

160.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*

(a)      Defendants and their co-conspirators agreed to, and did, in fact, raise the prices of German Luxury Vehicles by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which German Luxury Vehicles were sold, distributed, or obtained in Vermont.

(b)     Defendants deliberately failed to disclose material facts to Plaintiff and members of the Damages Class concerning their unlawful activities and artificially inflated prices for German Luxury Vehicles.  Defendants owed a duty to disclose such facts, and Defendants breached that duty by their silence.  Defendants misrepresented to all purchasers during the Class Period that their German Luxury Vehicles prices were competitive and fair.

(c)     Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicle price competition was restrained, suppressed, and eliminated throughout Vermont; (2) German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high levels throughout; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(d)     As a direct and proximate result of Defendants' violations of law, Plaintiff and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by the Defendants' willful and deceptive conduct, as described herein.

(e)     Defendants' deception, including their omissions concerning the price of German Luxury Vehicles, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing German Luxury Vehicles at prices born by a free and fair market. Defendants' misleading conduct and unconscionable activities constitute unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(on behalf of Plaintiff and the Damages Class)**

161.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

162.    Plaintiff brings this claim under the laws of all states listed in the Second and Third Claims, *supra.*

163.    As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched. Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of German Luxury Vehicles.

164.    Defendants have benefited from their unlawful acts and it would be inequitable for them to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiff and members of the Damages Class for German Luxury Vehicles.

165.    Plaintiff and the members of the Damages Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct. Plaintiff and the members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiff and the members of the Damages Class may make claims on a *pro rata* basis.

166.    Pursuit of any remedies against the firms from which Plaintiff and the members of the Damages Class purchased Vehicles containing German Luxury Vehicles subject to Defendants' conspiracy would have been futile.

**PRAYER FOR RELIEF**

Accordingly, Plaintiff respectfully requests that:

167.    The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable

notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Classes;

168.     That the unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed:

(a)     An unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

(b)     A *per se* violation of Section 1 of the Sherman Act;

(c)     An unlawful combination, trust, agreement, understanding and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein; and

(d)     Acts of unjust enrichment by Defendants as set forth herein.

169.     Plaintiff and the members of the Damages Class recover damages, to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiff and the members of the Damages Class be entered against Defendants in an amount to be trebled to the extent such laws permit.

170.     Plaintiff and the members of the Damages Class recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them.

171.     Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar

purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect.

172.    Plaintiff and the members of the Damages Class be awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and acts of unjust enrichment.

173.    Plaintiff and the members of the Classes be awarded pre- and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint.

174.    Plaintiff and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law.

175.    Plaintiff and members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

Dated:    September 20, 2017          SHEPHERD, FINKELMAN, MILLER &
                                                            SHAH, LLP

                                                     */s/Jayne A. Goldstein*
                                              By:   Jayne A. Goldstein (#144088)
                                                       Nathan C. Zipperian (#61525)
                                                       1625 North Commerce Parkway, Suite 320
                                                       Fort Lauderdale, FL  33326
                                                       Telephone:  (954) 515-0123
                                                       Facsimile:  (866) 300-7367
                                                       Email:  jgoldstein@sfmslaw.com
                                                                    nzipperian@sfmslaw.com

James C. Shah
Natalie Finkelman Bennett
SHEPHERD, FINKELMAN, MILLER &
   SHAH, LLP
35 E. State Street
Media, PA  19063
Telephone:  (610) 891-9880
Facsimile:  (866) 300-7367
Email:  jshah@sfmslaw.com
        nfinkelman@sfmslaw.com

*Attorneys for Plaintiff, Jacqueline Kebart*